## In re CHANGE OF NAME OF DeWEESE, Appellant.

[Cite as *In re Change of Name of DeWeese,* 148 Ohio App.3d 201, 2002-Ohio-2867.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–02–04.

Decided June 12, 2002.

Richard A. Kahler, for appellant.

SHAW, Presiding Judge.

{¶ 1}   This appeal is brought by Joseph Foster DeWeese from the judgment of the Probate Division of the Seneca County Common Pleas Court denying his application to change his name from Joseph Foster DeWeese to Jolleen Freya

DeWeese. In his single assignment of error, appellant alleges that the probate court abused its discretion in denying the application.

{¶ 2} Ohio has traditionally recognized two ways in which a person may accomplish a name change. First, absent an intent to commit fraud, a person may change his name at common law by simply adopting another name. *Pierce v. Brushart* (1950), 153 Ohio St. 372, 41 O.O. 398, 92 N.E.2d 4; *Dennis v. Ford Motor Co.* (1997), 121 Ohio App.3d 318, 699 N.E.2d 993. Second, a person may obtain a statutory name change pursuant to R.C. 2717.01. At least one appellate court has held that the statutory name-change procedures are in addition to the common-law method and do not abrogate it. *State ex rel. Robinson v. Clark* (1994), 91 Ohio App.3d 627, 629, 632 N.E.2d 1393.

{¶ 3} In the case before us, appellant invoked the statutory process under R.C. 2717.01(A). The statute requires an applicant to (1) be a resident of the filing county for at least one year prior to the filing of the application, (2) give notice of the application by publication in a newspaper of general circulation in the filing county at least thirty days before the hearing, and (3) set forth on the application the cause for which the name change is sought. Upon proof that the proper notice was given and that the facts set forth in the application show "reasonable and proper cause" for changing the name of the applicant, the court *may* order the change of name. R.C. 2717.01(A).

{¶ 4} In this case, the appellant met the residency and notice requirements of the statute. In addition, the record establishes that for much of his adult life appellant had been married to a woman with five children, four of whom were his as issue of the marriage. However, the record also demonstrates that appellant has suffered from significant periods of gender confusion, resolving at various times to live his life as a man and then, at other times, to live as a woman. Over the years this confusion led to the commencement and then discontinuation of gender counseling, scheduling and then cancelling of appointments to commence the process for sex-change surgery, commencement and then discontinuation, and then recommencement of hormone treatments, and apparently some sort of breast enhancement procedure, evidently followed by surgery to remove the enhancement.

{¶ 5} As a further result of his gender confusion, the hearing transcript and documents filed in the case indicate that within the past several years, the appellant had informally adopted for himself and been known by several first names, including, "Jo," "Jo–Jo," "Lisa," "Jolleen," "Joe," and "Joseph." In 1996, the appellant formally sought and obtained in the Probate Court of Sandusky County a first name change to "Jodi." However, in 1998, appellant returned to the Probate Court of Sandusky County, terminated the name "Jodi," and changed his first name back to Joseph.

{¶ 6} On the day of the hearing in this case, appellant, who was now divorced from his first wife, appeared before the court with his female fiancée. Appellant testified that he had now resolved once again to live his life as a woman. He further testified that he was not presently undergoing any counseling, had no immediate plans for any sex-change surgery, and had made plans to marry his fiancée at the mayor's office later that same day. However, he stated that he would not do so unless the probate court granted his name change from Joseph Foster DeWeese to "Jolleen Freya" DeWeese, the latter name apparently being the only name under which he was willing to be married. His fiancée testified supportively at the hearing basically corroborating all of the foregoing information. At the conclusion of the hearing, the probate court denied the application without explanation or findings.

{¶ 7} We review the denial of a name-change application under an abuse-of-discretion standard. *In re Hall* (1999), 135 Ohio App.3d 1, 3, 732 N.E.2d 1004. The term "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 8} The appellant argues that absent a specific finding of fraudulent intent, it was an abuse of discretion for the probate court to deny his petition. We agree that a primary purpose of the statute, particularly as to the residency and notice requirements, is to prevent fraud. See, e.g., *State ex rel. Robinson v. Clark* (1994), 91 Ohio App.3d 627, 632 N.E.2d 1393. Moreover, we agree that a primary concern of the probate court in conducting a name-change hearing should always be the perceived potential for fraud, particularly where it could lead to financial abuse or misrepresentation in society. See, e.g., *In re Name Change of Handley* (2000), 107 Ohio Misc.2d 24, 736 N.E.2d 125. However, we do not agree that specific evidence of fraudulent intent is the only factor the probate court is permitted to consider in determining "reasonable and proper cause" or in otherwise exercising its discretion to deny a name-change application under the statute. In fact, if the legislature had intended fraudulent intent to be the only proper basis for the denial of a name-change application, it could have easily said so in R.C. 2717.01.

{¶ 9} On the contrary, we believe that in considering an adult name-change application under R.C. 2717.01(A), the probate court is also permitted to consider factors such as the personal stability of an applicant bearing on the credibility of the request, as well as the fact that the authority of the judicial system is being invoked to sanction each such request. We do not believe that absent express

findings of fraud, the probate court has no choice but to simply sign off on the unsettled and momentary impulses of every applicant. In sum, the appellant's desire and freedom to continuously reinvent his name or lifestyle does not necessarily entail the right to compel the court system to participate at every juncture.[1]

{¶ 10} In this case, the ongoing and conflicted personal history of the petitioner, as only partially reflected in the numerous and recent prior name changes, may well constitute sufficient basis for the Probate Court of Seneca County to deny this particular request. Moreover, while there is no direct evidence of fraudulent purpose or consequence in this case, at some point, a history such as presented here begins to raise a serious potential for it.

{¶ 11} Nevertheless, we also believe that despite the wide latitude obviously given to the court under the statute, where a name-change application is sought and denied under R.C. 2717.01(A), the better practice would be for the probate court to articulate the reasons and basis for its ruling on the record and in its judgment entry. Because this does not appear to have been done in this case, we vacate and remand the matter to the probate court for an opportunity to do so. To this extent only, the assignment of error is sustained.

Judgment reversed
and cause remanded.

HADLEY, J., concurs.

THOMAS F. BRYANT, J., concurs in judgment only.

THOMAS F. BRYANT, Judge, concurring in judgment only.

{¶ 12} I concur with the majority's conclusion that the trial court abused its discretion by failing to articulate reasons for denying the appellant's name-change petition. However, I do not agree with the majority's assertion that it is within the province of this court or any other to consider an individual's "conflicted personal history" when reviewing a name-change application and therefore concur in judgment only. "It is universally recognized that a person may adopt any name he may choose so long as such change is not made for fraudulent purposes." *Pierce v. Brushart* (1950), 153 Ohio St. 372, 380, 41 O.O. 398, 92 N.E.2d 4. I do not believe that R.C. 2717.01(A) was enacted to vest the courts

---

1. There does not seem to be any *right* to a name change created in R.C. 2717.01(A). On the contrary, the language of R.C. 2717.01(A) does not require the court to grant the application even if all of the required elements are met, stating instead that upon such proof, the court *may* order the change of name.

with discretion to decide which applicant's lifestyle or choice of name is suitable to be used for lawful purposes.

{¶ 13} While I agree with the majority that persons should not be allowed to abuse the courts by changing their names at every whim, I do not believe that one previous name change should bar all future petitions. The primary reason for denying a requested name-change application should be the potential for fraud, particularly where it could lead to financial abuse or misrepresentations in society. *In re Name Change of Handley* (2000), 107 Ohio Misc.2d 24, 26–27, 736 N.E.2d 125 (citations omitted); *In re Hall* (1999), 135 Ohio App.3d 1, 732 N.E.2d 1004, citing *In re Ladrach* (P.C.1987), 32 Ohio Misc.2d 6, 513 N.E.2d 828.

{¶ 14} Accordingly, I would hold that absent the finding of an intent to commit fraud or otherwise harm the public, appellant's name change should have been granted.