[Cite as *In re Adoption of O.N.C.*, 191 Ohio App.3d 72, 2010-Ohio-5187.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY

IN RE ADOPTION OF O.N.C.                CASE NO. 3-10-10


O P I N I O N


Appeal from Crawford County Common Pleas Court
Probate Division
Trial Court No. 000619

Judgment Affirmed

Date of Decision:  October 25, 2010


APPEARANCES:

     **Geoffrey L. Stoll, for appellant, Brian C.**

     **Joseph M. Strickland, pro se.**


     **PRESTON, Judge.**

     **{¶1}** Petitioner-appellant, Brian C., appeals the judgment entry of the Crawford County Court of Common Pleas, Probate Division, finding that consent

from the biological father, appellee, Joseph Michael Strickland ("Strickland"), was required before the adoption of his minor child could take place. For the reasons that follow, we affirm.

{¶2} The facts of this case are largely not in dispute. O.N.C. is the biological child of Anita C. and Strickland. Anita and Strickland were never married. However, on January 2, 2002, the Crawford County Juvenile Court designated Anita as the sole residential parent of O.N.C. and ordered Strickland to pay Anita the sum of $165.76 per month for the support of O.N.C. Subsequently, sometime at the end of 2006, Strickland became incarcerated.

{¶3} On December 8, 2009, a petition seeking the adoption of O.N.C. was filed by her stepfather, Brian C., in the Crawford County Court of Common Pleas, Probate Division. The petition alleged that consent from the child's biological father, Strickland, was not required, because Strickland had failed, without justifiable cause, to provide for the maintenance and support of the child in the year immediately preceding the filing of the petition. Along with the petition for adoption, Anita filed a written consent to the adoption.

{¶4} A hearing on the petition was held on March 2, 2010. Only the testimony of Tina Howell, who was the caseworker for the Crawford County Department of Job and Family Services, Child Support Unit, was presented at the hearing. Howell testified that part of her duties at the department was to monitor

child-support payments, seek work orders from the court if those payments were not being made, and then monitor the compliance of the work orders if issued. In this particular case, Howell said that since January 22, 2002, Strickland had been ordered to pay $165.76 per month for the support and maintenance of O.N.C. As of February 2010, the total amount of the arrearage payments due from Strickland was $7,672.02. In particular, with respect to the payments made by Strickland from December 8, 2008 through December 8, 2009, Howell stated that Strickland had paid only $86.89.[1] As a result, Howell stated that based on her case file, for the period of December 8, 2008, through December 8, 2009, Strickland was not substantially current in his child-support obligations.

{¶5} On cross-examination, Howell acknowledged that prior to December 2008, Strickland had been close to being current on his child-support payments and that as a result of his incarceration at the end of 2006, Strickland's income had

---

[1] The trial court noted in its judgment entry that the actual total amount paid by Strickland from December 8, 2008, through December 8, 2009, was $32.39 and not $86.89. When adding all of the individual monthly payments testified to by Howell, we agree that despite Howell's testimony, the actual total amount paid by Strickland supported by the record was only $32.39.

dramatically changed. Moreover, Howell acknowledged that despite Strickland's incarceration, he was still paying around 25 percent of what he was receiving as his state pay. Nevertheless, Howell stated that even though he was incarcerated, the department considered him to be voluntarily unemployed.

{¶6} At the conclusion of the hearing, the trial court issued an order bifurcating the issues of parental consent and best interests of the child, and granted Brian C. one week in which to file a written argument of the facts and applicable law pertaining to the issue of whether consent from Strickland was required. Strickland's counsel had already filed her written argument and brief at the commencement of the hearing. In Brian C.'s written argument, he argued that consent from Strickland was not necessary based on the amended language in R.C. 3107.07(A), which had recently become effective on April 7, 2009. Specifically, he argued that consent from Strickland was not required if he had failed to provide "more than de minimis" maintenance and support for his child. Since it was clear that Strickland had contributed only $86.89[2] for the entire one-year period preceding the adoption petition, Brian C. argued that Strickland had clearly not provided "more than de minimis" maintenance and support, and thus his consent to the adoption was not required.

---

[2] Again, the record indicates that Strickland only paid $32.39 in child-support payments.

{¶7} On March 12, 2010, the trial court issued its decision finding that consent from the biological father, Strickland, was required. Moreover, the trial court found that since Strickland had contributed something, even if it was only 1.6 percent of his total obligation, his contribution was sufficient to require consent before the adoption petition could be granted.

{¶8} Brian C. now appeals and raises one assignment of error for our review.

Assignment of Error

The trial court's finding that the consent of the biological father was required is contrary to the April 7, 2009 amendment to O.R.C. §3107.07.

{¶9} In his only assignment of error, Brian C. argues that the trial court erred in finding that Strickland's consent was required despite the new language in R.C. 3107.07(A).

{¶10} At issue here is the interpretation of the most recent amendment to R.C. 3107.07(A), which sets forth when consent from a child's biological parent is not required before adoption petition may be granted. In particular, the question is whether the phrase "provide more than de minimis" pertains to both a biological parent's contact with the child and the maintenance and support of the child, or only pertains to the biological parent's contact with the child.

**{¶11}** Statutory interpretation involves a question of law, and thus, our review is conducted under a de novo standard of review. *Dawson v. Dawson*, 3d Dist. Nos. 14-09-08, 14-09-10, 14-09-11, and 14-09-12, 2009-Ohio-6029, ¶45, citing *State v. Wemer* (1996), 112 Ohio App.3d 100, 103, 677 N.E.2d 1258. Consequently, we review the decision without deference to the trial court's interpretation. Id.

**{¶12}** Parental consent is generally required before an adoption petition can be granted. However, R.C. 3107.07 sets forth those circumstances under which parental consent is not required. Prior to the newest amendment, R.C. 3107.07(A) provided:

> A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

However, effective April 7, 2009, the language in R.C. 3107.07(A) was modified by the legislature and now reads:

> A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds *by clear and convincing evidence* that the parent has failed without justifiable cause *to provide more than de minimis contact* with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least

one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

(Emphasis added.) As illustrated above, with respect to the amended statutory provision, the legislature clarified that the evidentiary standard was clear and convincing evidence, substituted the word "contact" for "communicate," and added the qualifying phrase "to provide more than de minimis." It is this particular qualifying phrase that is the subject of this appeal.

{¶13} Here, Brian C. alleged in his adoption petition that Strickland had failed to provide maintenance and support as required by judicial decree for O.N.C. At trial, Brian C. argued that consent from Strickland was not necessary based on the new statutory language in R.C. 3107.07(A). Specifically, he argued that under the new statutory language, as long as he showed by clear and convincing evidence that Strickland had failed to provide "more than de minimis" maintenance and support for his child, then Strickland's consent was not required for the adoption. Since Strickland had contributed only $86.89[3] for the entire one-year period preceding the adoption petition, he had clearly failed to provide "more than de minimis" maintenance and support, and thus, his consent to the adoption was not required.

{¶14} The trial court disagreed with Brian C's interpretation of the statutory language, and found that "the qualifying adjective of 'de minimis' must

---

[3] Again, the record indicates that Strickland paid only $32.39 in child-support payments.

be applied to only the communication/contact side and could not be interpreted as also applying to the support side." The trial court also acknowledged that while Strickland had paid only 1.6 percent of his total yearly obligation, under this precedent, because Strickland had provided *some* support, it was sufficient to require consent for the adoption.

{¶15} Brian C. claims that the trial court erred in interpreting the new statutory language. In particular, he claims that the phrase "to provide more than de minimis" pertains to *both* a parent's contact *and* a parent's maintenance and support of their child, and thus, he only had to show that Strickland had failed to provide more than a de minimis amount of maintenance and support. Again, because Strickland had only paid $32.39 in child support, or 1.6 percent of his total yearly obligation, it is clear that he had failed to provide more than a de minimis amount of support, and thus, Brian C. claims that he was not required to obtain Strickland's consent for the adoption. We disagree.

{¶16} The primary goal of statutory interpretation is to arrive at the legislative intent. *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 39, 741 N.E.2d 121. The starting point is the statute's language; if the language is plain and unambiguous, the inquiry is over, the language must be applied as written, and there is no need for the court to apply further rules of statutory interpretation. Id., citing *Provident Bank v. Wood* (1973), 36 Ohio St.2d

101, 105, 304 N.E.2d 378; *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. However, when the statute's language is ambiguous, the court may consider several factors, "including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." Id. at 40, citing R.C. 1.49; *State v. Jordan* (2000), 89 St.3d 488, 492, 733 N.E.2d 601.

{¶17} We recognize that there is a split among the appellate districts as far as what level of support is necessary to satisfy R.C. 3107.07(A)'s "maintenance and support" provision for requiring a biological parent's consent before an adoption of their child. Some districts, including this one, have held that any meager contribution constitutes sufficient maintenance and support for requiring a biological parent's consent. *In re Adoption of Allonas*, 3d Dist. No. 3-01-27, 2002-Ohio-2723; *Celestino v. Schneider* (1992), 84 Ohio App.3d 192, 616 N.E.2d 581 (6th Dist.) (minimal support payment provided by natural father was sufficient to preserve his consent as jurisdictional prerequisite to child's adoption); *Vecchi v. Thomas* (1990), 67 Ohio App.3d 688, 588 N.E.2d 186 (2d Dist.) (child could not be adopted without biological father's consent since biological father had made support payments totaling $130 during one year preceding filing of adoption petition, which prevented finding that he had failed to provide for maintenance

and support of minor child). However, other districts have adopted a more objective test, in which trial courts consider the totality of the circumstances outside just whether the biological parent gave some amount of money. *In re Crandall*, 1st Dist. No. C-060770, 2007-Ohio-855, ¶ 19-20 (finding that even though parent had made some payments, the biological parent had voluntarily quit her job and so the trial court's finding that she had failed without justifiable cause to provide adequate support and maintenance was supported by competent, credible evidence); *In re Adoption of Kilbane* (1998), 130 Ohio App.3d 203, 719 N.E.2d 1012 (8th Dist.) (finding that biological parent had failed to support child without justifiable cause since biological parent did not make any support payments until just prior to filing of adoption petition and biological parent's claims that he was unemployed throughout most of the year were contradicted by other evidence); *In re Adoption of Wagner* (1997), 117 Ohio App.3d 448, 690 N.E.2d 959 (11th Dist.) (finding that biological father had failed, without justifiable cause, to provide maintenance and support for his minor child since biological father paid less than 3 percent of his income in support even though he had sufficient income, and biological father failed to obtain employment commensurate with his level of education). Compare *Gorski v. Myer*, 5th Dist. No. 2005CA00033, 2005-Ohio-2604, ¶17 (finding that biological father had provided sufficient maintenance and support, and consent was required when

biological father saw the child every other weekend and provided the child with food, clothing, and toys) with *Garner v. Greenwalt*, 5th Dist. No. 2007 CA 00296, 2008-Ohio-5963, ¶ 32-33 (finding *Gorski* distinguishable and finding that in this case evidence failed to establish that appellant provided support and maintenance for children, and thus, consent was not required when even though biological mother had some income and provided occasional necessities, adoptive parents provided children with food, clothing, educational necessities, and medical attention a majority of the time).

{¶18} Unfortunately, despite Brian C.'s arguments to the contrary, the recent amendment to R.C. 3107.07(A) fails to clarify what level of support is necessary to require a biological parent's consent to an adoption. In fact, when looking at the plain language of the statute, we believe that it is still not clear what amount of support is necessary to require a biological parent's consent. We note that the repeated use of the word "provide" leads us to believe that "de minimis" applies only to a parent's contact. The statutory language prescribes that consent is not necessary when "the parent has failed without justifiable cause *to provide* more than de minimis contact with the minor child or *to provide* for the maintenance and support of the minor." (Emphasis added.) R.C. 3107.07(A). Because the statute repeats the word "provide," we believe that contact and maintenance/support are to be treated separately; and because "de minimis"

- 11 -

follows only the failure to provide contact to one's child, we believe that contact and maintenance/support are to be treated differently so that "de minimis" pertains only to a parent's contact. This interpretation is consistent with courts' treatment of R.C. 3107.07(A). Courts have made it clear that because R.C. 3107.07(A) is written in the disjunctive, then *either* failure to communicate/contact *or* failure to support during the one-year time period is sufficient to negate the need for a biological parent's consent. *In re Adoption of McDermitt* (1980), 63 Ohio St.2d 301, 304, 408 N.E.2d 680. As a result, an adoption petitioner need only establish the biological parent's failure to contact *or* failure to support, not both. *In re Adoption of Rodabaugh*, 3d Dist. No. 5-05-33, 2006-Ohio-1419, ¶ 9, fn. 1, citing *In re Adoption of Miller*, 3d Dist. Nos. 8-02-22, 8-02-23, 2003-Ohio-718, ¶ 16. Therefore, along with our interpretation of the statutory language based on the repeated use of the word "provide," applying the qualifying phrase only to the word "contact" would also be appropriate given prior courts' treatment of R.C. 3107.07(A).

{¶19} Additionally, the legislative history of R.C. 3107.07(A) further supports our conclusion that the legislature intended the qualifying phrase "more than de minimis" to pertain only to a biological parent's contact. In 2008, the General Assembly enacted Sub.H.B. No. 7 (effective April 7, 2009), which amended the requirements for bypassing consent from a biological parent when

granting an adoption petition. Prior to the final version discussed above, the bill originally provided for when the biological parent had to fail to "regularly communicate" or "significantly provide for the maintenance and support" to their child. (127th General Assembly Sub. H.B. No. 7, as introduced.) This was the version that was passed in the House; however, it was ultimately amended by the Senate Health, Human Services, and Aging Committee. In particular, the committee replaced the House amendment's language that the biological parent failed to "regularly communicate" with the language that the biological parent failed to "provide more than de minimis contact" with the minor child. (See Synopsis of Senate Heath, Human Services, and Aging Committee Report to Sub. H.B. No. 7, Legislative Service Commission, 127th General Assembly, Dec. 15, 2008). Furthermore, the committee also eliminated the qualifying term "significantly," which had qualified the biological parent's failure to provide for the maintenance and support, thereby leaving it the same as it had been before the amendment. Id. It was this particular version, without a qualifying phrase pertaining to "maintenance and support," that was ultimately enacted and became effective April 7, 2009.

{¶20} In light of the version of the bill passed by the House, it is clear that the legislature's original intent was to have qualifying phrases for both a parent's contact and a parent's maintenance and support. However, the Senate committee

amended the House's version by changing the qualifying phrase with respect to a parent's contact ("more than de minimis") and totally eliminated the qualifying phrase with respect to a parent's maintenance and support. Had the legislature intended the qualifying phrase to apply to both a parent's contact and to maintenance and support, it would have included the qualifying phrase in the statute. Instead, the committee amended the bill so that the qualifying phrase pertained only to a parent's contact, and it eliminated any other reference to a parent's maintenance and support. And it was ultimately this version (without a qualifying phrase for a parent's maintenance and support) that was enacted and effective at the time Brian C. filed his adoption petition. [4]

{¶21} Overall, based on the above, we find that R.C. 3107.07(A)'s qualifying phrase "more than de minimis" pertains only to a biological parent's contact with the minor child and does not modify a biological parent's

---

[4] Furthermore, we note that there is proposed legislation pending before the 128th General Assembly, which seeks to further amend the language in R.C. 3107.07(A). In particular, submitted S.B. No. 189 in its current version adds a provision specifically defining the phrase "de minimis" and indicates that "de minimis" was intended to apply only to a parent's contact: "A parent has provided more than de minimis contact with the minor if the parent has contacted the minor an average of one time per month during the year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner." (128th General Assembly Sub.S.B. No. 189.) Moreover, the proposed bill attempts to clarify what it means to have failed to provide "maintenance and support" to a child: "a parent has failed to provide for the maintenance and support of the minor as required by law or judicial decree if the parent paid less than twenty-five per cent of the amount owed under a court child support order for the minor during the preceding time period without justifiable cause." Id. This proposed bill, while not binding authority, further clarifies the legislature's intent that the phrase "de minimis" in the amendment at issue applied only to a parent's contact with their child.

maintenance and support of their minor child. Therefore, the trial court's interpretation was not in error.[5]

**{¶22}** Brian C.'s assignment of error is, therefore, overruled.

**{¶23}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

WILLAMOWSKI, P.J., and SHAW, J., concur.

---

[5] We note that Brian C. does not specifically challenge the trial court's finding that Strickland had provided some support, which was enough to require his consent, based on this court's prior decision in *In re Adoption of Allonas*, 3d Dist. No. 3-01-27, 2002-Ohio-2723. Therefore, we decline to discuss the precedential value of our prior decision at this time.