[Cite as *In re Name Change of Davis*, 2021-Ohio-3879.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:  NAME CHANGE OF:            CASE NO.  9-21-05

JOVON RICHARD DAVIS            O P I N I O N

Appeal from Marion County Common Pleas Court
Probate Division
Trial Court No. 21 NCG 001

Judgment Reversed and Cause Remanded

Date of Decision:   November 1, 2021

APPEARANCES:

*Jovon Richard Davis*, Appellant

**MILLER, J.**

{¶1} Appellant, Jovon Richard Davis, appeals the January 13, 2021 judgment of the Marion County Court of Common Pleas, Probate Division, denying his application to change his name. For the reasons that follow, we reverse.

*Factual Background*

{¶2} In 2009, Davis was convicted in Hamilton County, Ohio of murder and aggravated robbery and sentenced to a term of 24 years to life in prison. *State v. Davis*, 1st Dist. Hamilton No. C-090220, 2010-Ohio-5125, ¶ 17-19. Davis is currently incarcerated in the Marion Correctional Institution.

{¶3} On January 5, 2021, Davis filed an application to change his name. In his application, Davis stated that he had been a resident of Marion County for at least one year immediately prior to the filing of the application.

{¶4} On January 13, 2021, the trial court denied Davis's application, concluding that Davis's "involuntary incarceration in Marion County does not confer residency status."

{¶5} On February 8, 2021, Davis timely filed a notice of appeal.[1] He raises one assignment of error for our review.

**Assignment of Error**

**The trial court abused its discretion when it denied appellant's application for change of name of adult [R.C. 2717.01], finding**

---

[1] The State of Ohio, though not a party to the proceedings in the trial court or on appeal, filed an appellate brief in this matter. We have not considered the State's brief for any purpose in deciding this appeal.

**that the appellant's involuntary incarceration in Marion County did not confer residency status.**

{¶6} In his assignment of error, Davis argues the trial court erred by denying his application to change his name. He maintains that the trial court misapplied the venue provision of former R.C. 2717.01(A)(1) when it determined that he does not "reside" in Marion County as required to file an application to change his name.

*Standard of Review*

{¶7} Ordinarily, we apply an abuse-of-discretion standard when reviewing the denial of a name-change application. *In re Change of Name of DeWeese*, 148 Ohio App.3d 201, 2002-Ohio-2867, ¶ 7 (3d Dist.). However, to resolve Davis's assignment of error, we must determine the meaning of the word "resides" in former R.C. 2717.01(A)(1). Statutory interpretation presents a question of law that we review de novo. *In re Adoption of O.N.C.*, 191 Ohio App.3d 72, 2010-Ohio-5187, ¶ 11 (3d Dist.). "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13.

*Analysis*

{¶8} Davis filed his name-change application pursuant to former R.C. 2717.01, which provided that "[a] person desiring a change of name may file an application in the probate court of the county in which the person *resides*." (Emphasis added.) R.C. 2717.01(A)(1) (Mar. 22, 2013) (current version at R.C.

-3-

2717.02 (Aug. 17, 2021)).[2] The question is whether, under former R.C. 2717.01(A)(1), a person "resides" in a county by reason of their involuntary incarceration there.

{¶9} Initially, we note that Ohio case law provides some support for the trial court's conclusion that Davis's involuntary incarceration in Marion County does not mean that he "resides" in Marion County. "[P]recedent in this state indicates that [a person's] residence is not altered by imprisonment or other involuntary commitment." *State ex rel. Saunders v. Court of Common Pleas of Allen Cty.*, 34 Ohio St.3d 15, 16 (1987). In 1878, the Supreme Court of Ohio stated in dictum:

> A person under confinement for crime can not [sic] adopt a new residence until discharged from imprisonment. Such disability is said to arise from the general principle that a person under the power and authority of another possesses no right, or is incapacitated, to choose a residence.

*Sturgeon v. Korte*, 34 Ohio St. 525, 535 (1878). In 1925, the First District Court of Appeals held that "[r]esidence in a place, to produce a change of domicile, must be voluntary. If therefore, it be by constraint or involuntary, as arrest, imprisonment, etc., the antecedent domicile of the party remains." *Murray v. Remus*, 4 Ohio Law Abs. 7, 4 (1st Dist.1925). And in 1972, this court held that "[e]vidence merely of

---

[2] In 2021 H.B. No. 7, the General Assembly reorganized and "recodifie[d] the law governing the change of legal name process under R.C. Chapter 2717." Ohio Legislative Service Commission, *H.B. 7 Final Analysis* at 26, available at https://www.legislature.ohio.gov/download?key=17300&format=pdf (accessed Aug. 20, 2021). H.B. 7 distributed the various provisions of former R.C. 2717.01, with modifications, throughout R.C. Chapter 2717. *Id.* The first sentence of former R.C. 2717.01(A)(1), which contained the venue provision at issue in this case, is now codified in substantially identical form at R.C. 2717.02.

commitment of the plaintiff to the Lima State Hospital does not prove the establishment of residence [in Allen County] to provide venue for a divorce action * * *." *Bowers v. Baughman*, 29 Ohio App.2d 277 (3d Dist.1972), syllabus. Accordingly, the trial court's conclusion that Davis does not "reside" in Marion County solely by reason of his incarceration there is not a radical departure from Ohio precedent as such precedent instructs that a prisoner's pre-imprisonment county of residence generally remains his county of residence during his imprisonment.[3]

{¶10} That said, these cases are not dispositive of Davis's appeal. The applicability of the principle expounded in these cases seems to turn on whether the relevant statute or rule uses the word "resident" or some form of the word "reside." Courts have concluded that use of the word "resident" in a statute or rule implicates traditional concepts of legal domicile, in the sense of a permanent home, where one actually resides with the intent to remain. *State ex rel. Saunders* at 16 (concluding that because former Civ.R. 3(B)(9) used the word "resident," the county of involuntary incarceration was not the county where prisoner was a "resident" for purposes of venue in divorce action); *In re Guardianship of Goins*, 7th Dist. Mahoning No. 02-CA-163, 2003-Ohio-931, ¶ 47-48 (following the rationale in *State ex rel. Saunders* and concluding that because R.C. 2111.02(A) uses the word

---

[3] There is nothing in the record indicating where Davis resided prior to his arrest and incarceration.

"resident," "the mere fact of incarceration in one county does not change one's residence or stop one from being a resident of the county where he was a resident prior to incarceration"); *see Coleman v. Coleman*, 32 Ohio St.2d 155, 162 (1972) ("The word 'resident,' as used in R.C. 3105.03, means one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home.").

{¶11} In contrast, the Supreme Court of Ohio has suggested that statutes and rules that use some form of the word "reside" should be treated differently from those that use the word "resident":

> We note that [former] Civ.R. 3(B)(10) uses the term "resides," rather than the term "resident," as is used in [former] Civ.R. 3(B)(9). In his treatise on civil procedure, Judge McCormac suggests that the term, "resides," as used in [former] Civ.R. 3(B)(10), ought to be "liberally construed and not confused with [the] requirements for domicile." McCormac, Ohio Civil Rules Practice (1986 Cum.Supp.) 14, Section 2.04.

> Accordingly, we note that under some circumstances an incarcerated or involuntarily committed person may be able to have an action properly venued in the county of incarceration or commitment. However, such a determination awaits a proper case.

*State ex rel. Saunders* at 17.

{¶12} This court recently interpreted the use of the term "resident" as used in a municipal charter and stated:

> Specifically, "[b]ecause 'domicile' and 'residence' are usually in the same place, [the terms] are frequently used as if they had the same meaning." *Schill v. Cincinnati Ins. Co.*, 141 Ohio St.3d 382, 2014-

Ohio-4527, ¶ 25. "'Domicile,' however, means living in a locality with intent to make it a fixed and permanent home, while 'residence' simply requires bodily presence as an inhabitant in a given place." *Id.* In sum, "[a] person can have a residence that is not his or her domicile," and, "[t]hus, a person can have multiple residences, but can have only one domicile." *Id.* at ¶ 24-25.

*State ex rel. Donahue v. Allen Cty. Bd. of Elections*, 3d Dist. Allen No. 1-21-28, 2021-Ohio-3292, ¶ 22.

{¶13} This distinction between using the word "resident" and using some form of the word "reside" lies at the heart of one of the only cases analyzing the venue provision of former R.C. 2717.01(A)(1). *See In re Hall*, 135 Ohio App.3d 1 (4th Dist.1999). In *Hall*, the Fourth District Court of Appeals was presented with the same issue we now confront—whether a person "resides" in a given county for purposes of former R.C. 2717.01(A)(1) due to the person's involuntary incarceration in that county. In concluding that a prisoner can establish that he "resides" in the county of his incarceration for purposes of former R.C. 2717.01(A)(1), the lead opinion offered the following discussion:

The [name-change] application is to be filed in the county in which the person resides. The application should set forth that the applicant has been a bona fide resident of the county for at least one year prior to the filing of the application. Research reveals little in the way of authority as to whether a prisoner is a resident of the county where he is incarcerated. McCormac advises us that when the party is an actual person, he should be held to reside where he maintains a place of abode. The term "resides" should be liberally construed and not confused with the more technical requirements for a "domicile." Thus, a person may have more than one "residence" for the purpose of the civil rules. *See* McCormac, Ohio Civil Rules Practice (2d

> Ed.1992), Section 2.04. These comments discuss Civ.R. 3, while Civ.R. 73(B) specifically exclude the application of the general venue rules to proceedings in the probate court. However, his guidance is helpful in this matter.
>
> Judge Stephenson, in [*In re Paxson*, 4th Dist. Scioto No. 91 CA 2008, 1992 WL 154139 (June 30, 1992)], addressed this issue. There, a prisoner at the Southern Ohio Correctional Facility at Lucasville filed his name change application affirming that he was a resident of that Scioto County prison and had been for a year prior to filing. Subsequently, the prisoner was transferred to another prison in Richland County, and the Scioto County Probate Court dismissed his application.
>
> However, we found in *Paxson* that, for the purposes of the statute, it was only necessary for the applicant to establish his *residence* in the county at the time he filed the application. * * * The statute did not require the applicant to continue as a resident of that county once such residence had been established. Paxson, though incarcerated, had established his residence, albeit involuntarily, in Scioto County for the purposes of the statute, and the trial court erred in dismissing his application when he was transferred.

(Emphasis sic.) *Id.* at 4-5 (lead opinion).

{¶14} We agree with the analysis of the lead opinion in *Hall*. Based on *Hall*, and on the Supreme Court of Ohio's observations in *State ex rel. Saunders*, we are persuaded that the word "resides" in former R.C. 2717.01(A)(1) should be afforded a liberal construction and that it is possible under former R.C. 2717.01(A)(1) for a person to "reside" somewhere other than where their legal domicile makes them a "resident." Accordingly, a person can "reside" in the county of their involuntary incarceration as required to file a name-change application under former R.C.

2717.01(A)(1) even though they might not be considered a "resident" of that county under a different statute or rule.

{¶15} Here, the trial court's only basis for denying Davis's name-change application was its determination that Davis could not use his involuntary incarceration in Marion County to establish that he "resides" in Marion County. Because this determination was incorrect, the trial court erred by denying Davis's name-change application.

{¶16} Davis's assignment of error is sustained.

*Conclusion*

{¶17} For the foregoing reasons, Davis's assignment of error is sustained. Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**