IN RE ADOPTION OF KREYCHE.

[Cite as In re Adoption of Kreyche (1984), 15 Ohio St. 3d 159.]

(No. 84-387—Decided December 31, 1984.)

160

*Mr. Frank J. Cimino,* for appellant.
*Mr. John P. O'Neill,* for appellee.

WILLIAM B. BROWN, J. The sole issue presented is whether a "placement of the minor" for the purposes of R.C. 3107.07 necessarily occurs at the time of the marriage of a custodial parent. This court affirms the judgment of the appellate court and holds that under the facts of this case, the marriage of the natural father with whom the child was living did not constitute placement of that child under R.C. 3107.07.

A determination of when placement occurs is critical due to the relationship between R.C. 3107.06 and 3107.07 and their bearing on whether consent of a natural parent is required in an adoption proceeding.

R.C. 3107.06 provides as follows:

"Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

"(A) The mother of the minor;

"(B) The father of the minor, if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or if the minor has been established to be his child by a court proceeding."

R.C. 3107.07 provides in part as follows:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."[1]

R.C. 3107.07 does not define the term "placement." Appellant contends that a placement occurs within the meaning of R.C. 3107.07(A) as a result of a natural parent marrying and bringing the minor into the home with the stepparent.

---

[1] The constitutionality of R.C. 3107.07 was not raised by the parties and this court expresses no opinion thereon.

While the marriage of a natural parent may, under proper circumstances, initiate a placement, this court declines to adopt a hard and fast rule that such a marriage automatically, without exception, initiates a placement for adoption purposes pursuant to R.C. 3107.07. First, to adopt such a position fails to acknowledge that there are numerous remarriages where the children are not adopted by the new stepparent. Moreover, being ever mindful that here, as in all custody matters, the paramount concern is the best interest of the child, this court finds that a more flexible approach is warranted. The overriding policy of the best interest of the child can best be effectuated by considering the totality of the circumstances and the facts of each particular case to determine if a placement has in fact occurred.

In making a determination as to whether a placement occurred, a court should consider, among other factors, whether the child was placed in the home by a third-party agency, the welfare department, or by court order; whether the child was placed in the home by a private action; whether the marrying parent had legal custody of the child; and the intent of the parties.

In the instant case, the lower courts considered the totality of the circumstances and determined that the record did not support a finding of placement. The trial court stated as follows:

"It is the opinion of the Court that the placement of the child in the home of petitioner originally was not a placement for adoption. Even if the Court considered that the subsequent marriage made it such a placement, certainly the conduct of the parties in mutually working out an agreement as to support and visitation and, in fact, implementing that agreement would seem to negate any such theory of placement."

Similarly, the court of appeals in its decision on reconsideration stated that "[t]here is nothing in the record of the instant case which leads to the conclusion that Jessica was placed with appellant for adoption."

This court concurs in the above and would emphasize that in finding that no placement had occurred, the natural father did not have legal custody of Jessica at the time of his marriage. In addition, this court is impressed by the fact that approximately one year after the marriage of the natural father to Jean Schneider, Jessica's natural parents reached an agreement on custody, support, and visitation, obtained a court order consistent with those agreements, and thereafter implemented this order.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and HOLMES, JJ., concur.

LOCHER, J, concurs separately.

C. BROWN and J. P. CELEBREZZE, JJ., dissent.

LOCHER, J., concurring. This opinion represents Justice William B. Brown's last signed opinion as a formal member of the Ohio Supreme Court. It represents the culmination of a long and successful career of service to the people of this country and this state. It is also typical of Justice Brown's many opinions: a thoughtful, compassionate and analytically sound approach to a complex legal problem.

On occasion, over the many years we have served together on this court, I may have disagreed with Justice Brown on a legal point or two. Such disagreements, however, have not diminished my high respect for the man and for his integrity as a judge. If this retirement represents the loss of a colleague and friend on the bench, it represents a greater loss to the people and the Bar of the state of a great jurist.

I wish Justice Brown my best and trust his retirement, to the verdant hills of Chillicothe, will be long and healthful.

J. P. CELEBREZZE, J., dissenting. I dissent from the judgment of the majority and would hold that, under the facts of this case, the marriage of the natural father to the petitioner constituted placement under R.C. 3107.07. Jessica has been in the custody of her natural father, Michael Kreyche, since her parents' separation in February 1975. When Jessica was not yet a year old, her mother, appellee, left her with her father and moved to California. For the next year, from February 1975 to March 1976, Jessica received only sporadic communications and absolutely no monetary support from appellee. Then, for the next one and one-half years from March 1976 to the fall of 1977, appellee made no attempt whatsoever to contact her daughter. During those two and one-half years Michael cared for Jessica and met and married the petitioner-appellant. A year after Michael's marriage he was awarded permanent custody of his daughter. As a result of this custody award, Michael and appellee reached a formal agreement in January 1979, regarding child support and visitation. Despite this agreement, from April 1979 to March 1980 appellee made only five payments, totalling $220 for Jessica, and from March 1980 to August 1981 she provided no support for her daughter.

Since Michael's marriage to the petitioner in June 1977, Jessica has lived with them as their child. The only mother Jessica has known since she was less than one year old is the petitioner. Thus, I would find that Michael placed his daughter in petitioner's home at the time of Michael's and appellant's marriage. I would further find that since appellee failed to communicate with or support Jessica within the year prior to that placement, appellee's consent to Jessica's adoption by petitioner is not required.

C. BROWN, J., concurs in the foregoing dissenting opinion.