## In re ADOPTION OF KILBANE et al.

[Cite as *In re Adoption of Kilbane* (1998), 130 Ohio App.3d 203.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73656.

Decided Oct. 1, 1998.

Behrens & Gioffre and Jill Friedman Helfman, for appellee, Michael Kilbane.

Thomas G. Kelley, for appellant, Jack Stineman.

*Per Curiam.*

In this accelerated appeal, Jack Stineman challenges a decision from the probate court determining that, pursuant to R.C. 3107.07(A), his consent was not required for the proposed adoption of his two minor children by their stepfather, Michael Kilbane. Stineman assigns the following two errors for our review:

"I. The trial court erred in finding that Jack Stineman did not communicate with his children during the one-year prior to filing the involved adoption petition.

"II. The trial court erred in finding that Jack Stineman did not support his children for the involved one-year period pursuant to R.C. 3107.07(A)."

After reviewing the evidence and the arguments of the parties, we find that the trial court properly determined that Stineman's consent was not required for the adoption. For the reasons set forth below, we affirm the decision of the trial court. The apposite facts follow.

Jack Stineman and Kimberly Kilbane (f.k.a. Kimberly Stineman) were married on June 16, 1990, and divorced on July 31, 1992. At the time of the divorce, the couple had a daughter, Ashley Anne Stineman (born September 18, 1990) and were expecting a second child. In the divorce decree, Stineman was ordered to pay $336.60 per month in child support for Ashley. Upon the birth of the parties' second child, Tyler Keith Stineman (born November 9, 1992), Stineman was to pay $476.67 per month for both children.

Despite the court's order, Stineman did not make any child support payments in 1992 or 1993. He made his first payment in 1994. On January 22, 1996, he made one payment of $241.99 (about half of the scheduled monthly amount). On January 22, 1996, Stineman made one payment of child support but made no other payments for the year 1996. On October 22, 1996, Stineman began working at Central Heating and Air Conditioning Company, earning $16,680 per year. On November 7, 1996, he injured his hand while at work and filed a claim for workers' compensation. He received a benefit check shortly thereafter but did not make any child support payments. On December 27, 1996, Stineman was found to be in contempt of court for failing to pay child support as ordered in the divorce decree. He was determined to be $14,634.86 in arrears and was ordered to pay an additional amount of $46.77 towards the arrearage. Stineman did not notify the Domestic Relations Court that he had a pending workers' compensation claim. However, during a private meeting with his former wife, Kimberly, Stineman indicated that he had injured his hand at work and was attempting to conceal the injury. Kimberly Kilbane reported the injury to her case worker at the Child Support Enforcement Agency ("CSEA") and advised her that Stineman might be receiving workers' compensation. Thereafter, a wage withholding order was issued. Pursuant to the withholding order, four payments of $220 were made to CSEA toward Stineman's child support obligation. The payments were made on January 14 and 29 and February 10 and 24, 1997.

On February 2, 1997, Kimberly Kilbane's husband, Michael Kilbane, petitioned for the adoption of Ashley and Tyler Kilbane. In the petition, Michael Kilbane cited R.C. 3108.07(A) and argued that Stineman's consent to the adoption was not necessary because he had failed to communicate with or to provide support for the children in the year preceding the petition for adoption. After initially determining that Stineman had not communicated with or provided support for the children during the preceding year, the probate court granted the petition.

The trial court later vacated its journal entry *sua sponte* and ordered a hearing on the case.

At the hearing, Stineman testified that when he began working at Central Heating & Air Conditioning, he notified them that he was subject to a wage withholding order. He testified that, since he was injured so soon after he began working there, the support amount due was taken from his workers' compensation check. He admitted that he did not call CSEA to notify them of his workers' compensation claim, did not tell them his total disability claim was approved, and did not tell them when he received his first disability check. Also, even though he received a disability check before the contempt hearing, he did not inform the court of the pending claim or advise it that he had received a check.

Kimberly Kilbane testified that it was she who informed CSEA of the potential workers' compensation claim. She also stated that she had no personal knowledge of any communication between Stineman and the children from February 27, 1996, to February 27, 1997, and that he never picked up the children for visitation during that time. However, on cross-examination, she conceded that Stineman called the house less than half a dozen times during that year and that he spoke to the children "probably half" of those times. She also admitted that the children told her that they saw Stineman "many times" during that one-year period. Stineman did not testify on his own behalf and gave no testimony with respect to his communication with the children.

The trial court found that Michael Kilbane proved by clear and convincing evidence that Stineman failed to support and communicate with the children for the one year preceding the adoption petition. The petition for adoption was granted. This appeal followed.

In his first assignment of error, Stineman argues that the trial court erred in finding that he failed to communicate with his children during the one year immediately preceding the adoption petition. However, during oral argument, Michael Kilbane conceded that Stineman did communicate with the children during the statutory time period. Consequently, we will limit our discussion to the issue raised by Stineman's second assignment of error.

In his second assignment of error, Stineman argues that the trial court erred in finding that he failed to provide for the maintenance and support of his children for the one-year period immediately preceding Michael Kilbane's petition for adoption. R.C. 3107.07 provides:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the

maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

The burden of proof is on the petitioner to prove by clear and convincing evidence not only that the natural parent has failed to support the child for the one-year period, but also that there existed no justifiable reason for the failure to pay child support. *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 104, 515 N.E.2d 919, 921–922. Once the petitioner goes forward with evidence that the natural parent failed to support the child for the statutory period, the burden of going forward with evidence shifts to the natural parent to show some justifiable cause for nonsupport. *Id.* In determining whether a failure to provide support was without justifiable cause, the probate court must examine the entire one-year period. *Id.* at 106, 515 N.E.2d at 923–924.

"A parent must justify his or her failure to support for substantially the entire one-year period. It is not enough to show that some time during the year a failure to support was justified. It must be demonstrated that no modicum of support reasonably could have been provided at any time during the year." *In re Adoption of Kessler* (1993), 87 Ohio App.3d 317, 321–322, 622 N.E.2d 354, 357, citing *Bovett,* 33 Ohio St.3d at 106, 515 N.E.2d at 923–924.

However, other Ohio cases have determined that partial payments made by a natural father shortly before the filing of the petition for adoption do not negate the application of R.C. 3107.07(A). See *In re Adoption of Thomas* (Dec. 22, 1987), Licking App. No. CA–3311, unreported, 1987 WL 33014; *In re Adoption of Carletti* (1992), 78 Ohio App.3d 244, 604 N.E.2d 243. Those courts have reasoned that a natural parent should not be allowed to defeat the application of the statute by making token support payments immediately before the adoption petition is filed. The first of the four payments Stineman made in 1997 was made on January 14, 1997, just five weeks before the application was filed. This evidence raises a question about whether Stineman made the payments in an effort to circumvent the application of R.C. 3107.07(A). As stated in *In re Serre* (1996), 77 Ohio Misc.2d 29, 34, 665 N.E.2d 1185, 1188, "a nonconsenting parent should not be permitted to thwart the operation of R.C. 3107.07(A) merely by making one or two token support payments just prior to the filing of an adoption petition. Although we must strictly construe the language of R.C. 3107.07(A) in order to protect the interests of the natural parent, the court should not have to adopt a construction so strict as to turn the statute into a sham."

The fact that Stineman did not make any payments until just prior to the filing of the adoption petition is made even more suspicious by his failure to advance a legitimate reason for not paying child support. Though Stineman claimed to

have been unemployed through most of 1996, he indicated on a job application that he was employed at a local tavern from September 1995 through October 1996. Though he claimed that he lied on the application and was never employed at the tavern, Kimberly Kilbane testified that he sometimes attempted to excuse his failure to show up for scheduled visits by saying that he had to go to work. Also, despite his claimed unemployment, there is no evidence that Stineman sought unemployment compensation, nor did he file a motion to reduce his child support obligation. When asked how he paid for his food, he testified that his food was provided either by his mother or his roommate. He also claimed that his mother paid for his medically necessary insulin. Stineman also admitted that he received a disability check before December 27, 1996, and failed to pay any of his child support obligation. The evidence presented by Stineman shows no justifiable cause for his failure to comply with the support order.

This case is distinguishable from *In Re Adoption of Lydon* (December 12, 1995), Cuyahoga App. No. 49838, unreported, 1985 WL 4347, in which we held R.C. 3107.07(A) inapplicable to a father who did not make any child support payments during the year before his child's stepfather petitioned to adopt the child. In *Lydon,* the natural father had three visits with the child during the year before the petition was filed. The visits ranged from four days to two weeks in length. The father paid all costs associated with the visits, including transportation, clothing, and even a doctor's bill incurred when the child became ill during one of the visits. During each visit, the expenses associated with the visit exceeded the amount of the father's support obligation for that month. We concluded that the expenditures by the father in connection with the child's visits fulfilled his support obligations during the periods of visitation.

In this case, although there was some evidence of contact between Stineman and his children during the year before the adoption petition was filed, there was no indication that Stineman ever visited with the children for extended periods of time as was the case in *Lydon.* Furthermore, during the months when Stineman did make support payments, the amounts paid were less than those required by the court's child support order. It cannot be said that Stineman fulfilled his support obligations in this case. Accordingly, we conclude that Michael Kilbane has established by clear and convincing evidence that Stineman has failed to support the children without justifiable cause for the one-year statutory period. Stineman's second assignment of error is overruled.

*Judgment affirmed.*

BLACKMON, A.J., KARPINSKI and SPELLACY, JJ., concur.