DECISION.
{¶ 1} Ann Assiter ("Assiter") appeals the probate court's judgment that her consent to the adoption of two of her biological children was not required. We conclude that Assiter's assignment of error is not well taken and affirm the judgment of the probate court.
 {¶ 2} Ann and Stephen Assiter are the biological parents of five children. In December 2002, while the family lived in Texas, Stephen Assiter was arrested for allegedly taking sexually explicit photographs of his daughter and possibly the other children. Stephen Assiter was later convicted of transmitting and receiving child pornography and was sentenced to five years in a federal penitentiary. According to a report filed with the District Court of Briscoe County, Texas, Assiter had confirmed that she had been present and had participated while the photographs were being taken. The Texas Department of Protective and Regulatory Services took the children into emergency custody and determined that the children should be placed in foster care for their immediate safety and well-being.[1] In early 2003, both Assiter and Stephen were ordered to do a number of things, including attending parenting classes, cooperating in drug and alcohol dependency assessments, and maintaining employment sufficient to meet the family's needs. Additionally, each was ordered to pay $9 a month for the medical support of the children. Child support was not ordered.
 {¶ 3} The children lived in various facilities after being taken into emergency custody. On December 14, 2003, the Texas court granted custody of the children to *Page 3 
Debora Crandall, who is the maternal step-grandmother of the children and who lives in Cincinnati, Ohio. The children moved to Ohio. In its final order, dated May 28, 2004, the Texas court appointed Crandall permanent managing conservator of the children.[2] Assiter was named a possessory conservator, which allowed her visitation rights.
 {¶ 4} On July 20, 2005, Crandall filed a petition to adopt Tye, John, and George.[3] Crandall later withdrew her request to adopt Tye. In her petition, Crandall asserted that the consent of Assiter and Stephen was not required because both had failed to provide for the maintenance and support of John and George for a period of at least one year immediately preceding the filing of the petition or the placement of the children in her home. Assiter asserted that her consent was required.
 {¶ 5} A hearing was held before a magistrate of the Hamilton County Court of Common Pleas, Probate Division. At the conclusion of the hearing, the magistrate decided that the consent of Assiter and Stephen was not required. Assiter objected to the magistrate's decision.[4]
After conducting a hearing and receiving briefs from the parties, the probate court overruled Assiter's objections, approved the decision of the magistrate, and referred the matter to the magistrate for a further determination whether adoption was in the best interest of the children.
 {¶ 6} In her sole assignment of error, Assiter now asserts that the probate court erred in sustaining the magistrate's decision. We disagree. *Page 4 
 R.C. 3107.07(A) {¶ 7} Before considering Assiter's assignment of error, we clarify the issue that is before us. The probate court has not yet determined whether adoption is in the children's best interest. If Assiter's consent is not required, the court must hold a best-interest hearing, and notice must be provided to Assiter. The ultimate issue whether the adoption petition should be granted is not before us.
 {¶ 8} Under R.C. 3107.06, a probate court may grant a petition to adopt only if written consent has been executed by the mother and father of the child, unless consent is not required under R.C. 3107.07. R.C.3107.07(A) provides that "[c]onsent to adoption is not required of * * *[a] parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." As the petitioner in this case, Crandall had the burden of proving the elements of R.C.3107.07(A) clearly and convincingly.[5] We must affirm the probate court's judgment if it is supported by competent and credible evidence.[6]
 {¶ 9} The parties agreed that Assiter had communicated with the children after they were removed from her custody in December 2002. And as stipulated by the parties before the magistrate, Assiter had paid child support for the year prior to the adoption petition. Assiter contends that as long as she provided maintenance *Page 5 
and support in either the year preceding the petition or the year preceding placement, her consent to the adoption was required. We disagree.
 {¶ 10} R.C. 3107.07(A) is written disjunctively. Consent of the parent is not required if the court finds one of four factors: (1) the parent did not communicate with the child in the year preceding the petition; (2) the parent did not communicate with the child in the year preceding the child's placement with the petitioner; (3) the parent did not provide support and maintenance during the year preceding the petition; or (4) the parent did not provide support and maintenance during the year preceding the child's placement with the petitioner. We recognize that this reading of the statute can lead to a harsh result. Once a parent has failed to provide communication or support during the first year-long period, no amount of support or communication during the year preceding the petition can ameliorate the effect of the statute. By statute, parental consent to adoption would not be required. But the harsh result of the statute is for the legislature to address; we apply the law as it is written.
 {¶ 11} Our reading of the statute is in accord with the Ninth Appellate District's decision in In re Jones.[7] In that case, the court held that the probate court had erred when it only considered one of the one-year periods when determining that a biological father's consent to adoption was required.[8] We conclude in this case that the probate court properly held that Crandall needed only to prove that Assiter had not provided support and maintenance to John and George during one of the two periods. *Page 6 
 Placement {¶ 12} The probate court concluded that the children were placed with Crandall, for purposes of R.C. 3107.07(A), on May 28, 2004. Assiter disputed this date, asserting that the correct date of placement was December 14, 2003, when the children were first placed in Crandall's custody.
 {¶ 13} "Placement" is not defined in R.C. 3107.07. Instead, courts are to consider the totality of the circumstances to determine when a placement has occurred.[9] "In making a determination as to whether a placement occurred, a court should consider, among other factors, whether the child was placed in the home by a third-party agency, the welfare department, or by court order; whether the child was placed in the home by a private action; whether the marrying parent had legal custody of the child; and the intent of the parties."[10]
 {¶ 14} Crandall argued below that, at the hearing before the magistrate, Assiter had stipulated that the date of placement was May 28, 2004. During the hearing before the probate court, Assiter denied that a stipulation had been made. The probate court acknowledged that the stipulation had been made but did not accept it, because it concluded that the stipulation went to a legal conclusion that was within the court's province. The court then considered the factors identified by the Ohio Supreme Court in Kreyche. Because we conclude that the probate court determined the correct placement date underKreyche, we need not decide whether Assiter should have been bound by what was clearly a stipulation made before the magistrate. *Page 7 
 {¶ 15} Although the children were in the physical custody of Crandall beginning on December 14, 2003, the Texas Department of Protective and Regulatory Services maintained jurisdiction over the children. On May 28, 2004, a permanent managing conservatorship was granted to Crandall, and the Texas court's involvement with the case ended. We conclude that the probate court's conclusion that the date of placement was May 28, 2004, was supported by competent and credible evidence.
 Support and Maintenance {¶ 16} Having determined that the probate court properly determined the date of placement, we next consider whether the evidence supported the finding that Assiter had failed without justifiable cause to provide support and maintenance for the children.
 {¶ 17} According to reports filed with the Texas court by the Texas Department of Protective and Regulatory Services, Assiter had not paid the monthly medical support that was ordered in early 2003. Assiter disputed this assertion, but she was unable to offer evidence that she had paid the support. Crandall testified that she had not received any money for the children from Assiter. According to Assiter, during the year in question, she had occasionally provided the children with shirts, underwear, socks, hats, toys, and meals, and she had also sent each of them a total of $11.
 {¶ 18} By way of justifying her minimal financial support of the children, Assiter testified that, from January 2003 to December 2003, she had made $400 to $600 a month. In December 2003, she had quit her job to open a bed and breakfast with a friend. In exchange for her work at the bed and breakfast, she had received *Page 8 
room and board and a stipend for gasoline money and personal needs. Assiter also testified that she had sold plasma twice a month for extra income.
 {¶ 19} Courts in Ohio are split on the level of support necessary to satisfy the "maintenance and support" provision of R.C. 3107.07(A). While some courts have held that any meager contribution constitutes maintenance and support,[11] others, like the Twelfth Appellate District, have concluded that "where a natural parent makes only negligible support payments, but that parent is fully capable of providing more than token support to his child, the trial court may find that the parent unjustifiably failed to support the child."[12] The latter appellate districts have followed the view espoused in Justice Douglas's concurrence in In re Adoption of Bovett, in which he questioned "whether the making of one payment of support during the year or the sending of a Christmas card is enough to frustrate the operation of [R.C. 3107.07(A)]."[13] Justice Douglas went on to suggest that "the determination must be left to the trial judge who can view the entire spectrum of events and the rights, duties and responsibilities of all the parties appearing in the case."[14] We join those appellate districts that have adopted this approach.[15]
 {¶ 20} Applying this approach, the probate court concluded that Assiter had failed unjustifiably to maintain and support John and George. It found that Assiter's testimony that she had paid medical support was not credible. We defer to the court on issues of witness credibility. The court further found that Assiter's occasional *Page 9 
purchases and gifts to the children did not constitute maintenance. Nor was the court convinced that Assiter had justifiable cause not to provide maintenance and support to the children. It concluded that Assiter's income was more than enough to allow her to pay the court-ordered medical support. And it found that Assiter had voluntarily forfeited income when she quit her job to open a bed and breakfast. We conclude that the probate court's finding that Assiter had failed without justifiable cause to provide adequate support and maintenance was supported by competent and credible evidence.
 {¶ 21} The probate court did not err in overruling Assiter's objections and sustaining the magistrate's decision that Assiter's consent to the adoption was not required. The sole assignment of error is overruled, and we therefore affirm the judgment of the probate court.
Judgment affirmed.
HENDON and WINKLER, JJ., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] Four of the children were placed in emergency custody. The oldest child, a son, was an adult in 2002.
[2] Tex.Fam. Code 153.371.
[3] Wendy Assiter was 18 years old when the petition was filed and had moved from Crandall's home.
[4] Stephen did not object to the decision.
[5] In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,481 N.E.2d 613, paragraph four of the syllabus.
[6] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[7] (1990), 70 Ohio App.3d 576, 591 N.E.2d 823.
[8] Id. at 579.
[9] In re Adoption of Kreyche (1984), 15 Ohio St.3d 159, 162,472 N.E.2d 1106.
[10] Id.
[11] See Celestin0 v. Schneider (1992), 84 Ohio App.3d 192, 196-197,616 N.E.2d 581.
[12] In re Adoption of Myers (Nov. 20, 2000), 12th Dist. No. A2000-05-032.
[13] (1987), 33 Ohio St.3d 102, 107, 515 N.E.2d 919. For appellate districts that have adopted this view, see In re Adoption of Myers (Nov. 20, 2000), 12th Dist. No. CA2000-05-032; In re Adoption of Kilbane
(1998), 130 Ohio App.3d 203, 719 N.E.2d 1012; In re Adoption ofWagner (1997), 117 Ohio App.3d 448, 690 N.E.2d 959.
[14] Id.
[15] See In re Adoption of Myers, supra; In re Adoption ofKilbane (1998), 130 Ohio App.3d 203, 719 N.E.2d 1012; In re Adoption ofWagner (1997), 117 Ohio App.3d 448, 690 N.E.2d 959; and In re Adoptionof Knight (1994), 97 Ohio App.3d 670, 647 N.E.2d 251. *Page 1