[Cite as *In re Adoption of A.R.M.R.*, 2019-Ohio-253.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106969**

**IN RE: ADOPTION OF A.R.M.R.**
**A Minor Child**

[Appeal by J.J., Mother]

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2017 ADP 09087

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 24, 2019

**ATTORNEYS FOR APPELLANT**

Cara L. Santosuosso
Rachel P. Kareha
Laubacher & Company
Westgate Towers, Suite #626
20525 Center Ridge Road
Rocky River, Ohio 44116


**ATTORNEY FOR APPELLEE**

Patrick Dichiro
Law Office of Patrick Dichiro
6300 Rockside Road, Suite 302
Seven Hills, Ohio 44131


EILEEN T. GALLAGHER, J.:

**{¶1}** Appellant-Mother, J.J. ("Mother"), appeals the probate court's determination that the adoption of the minor child, A.R.M.R., to the child's stepmother could be completed without Mother's consent based on her failure to support the child without justifiable cause. Mother raises the following assignments of error:

1. The decision of the trial court was against the manifest weight of the evidence.

2. The trial court abused its discretion by failing to grant a reasonable continuance so that the parties could conduct adequate discovery prior to a full hearing.

**{¶2}** After careful review, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

### I. Procedural and Factual History

**{¶3}** A.R.M.R. is the biological son of Mother and D.R. ("Father"). Petitioner-appellee, T.R., is A.R.M.R.'s stepmother ("petitioner"). On November 21, 2017, the petitioner filed a

petition for the adoption of A.R.M.R. At that time, A.R.M.R. was seven years old and Mother was subject to an order of the juvenile court that required her to pay $95 per month, plus a two percent processing fee, in child support. The petition alleged that Mother's consent to the adoption was not required because she failed, without justifiable cause, to provide for the maintenance and support of A.R.M.R. during the year preceding the filing of the adoption petition. The petition was accompanied by a certified copy of Mother's child support payment history from the Cuyahoga County Child Support Enforcement Agency ("CSEA"), which reflected that no child support payments had been made by Mother from November 1, 2016, to November 14, 2017.

{¶4} A hearing on the petition for adoption was scheduled for January 4, 2018. On December 7, 2017, Mother received notice of the hearing. The notice provided that if Mother wanted to contest the adoption, she was required to file an objection to the petition within 14 days of service and appear at the scheduled hearing.

{¶5} Mother did not file written objections within 14 days of receiving notice. Instead, Mother appeared, pro se, at the January 4, 2018 hearing with the intent to make oral objections to the petition for adoption. The trial court granted Mother leave to file written objections to the adoption petition. Later that day, Mother filed her written objections, and the trial court scheduled a hearing for February 12, 2018, to determine whether Mother's consent to the adoption was necessary. On January 5, 2018, the trial court sent notice of the hearing to Mother.

{¶6} On January 22, 2018, Mother contacted counsel to represent her in connection with the adoption petition. On February 12, 2018, the parties appeared before the court for the consent hearing. Before the hearing began, however, counsel for Mother objected to the hearing going forward without a reasonable continuance. Counsel indicated that she had just been

retained, did not have the opportunity to review the case file or relevant documents, and was under the impression the hearing "was just a pretrial hearing" and not "the fully contested [consent hearing]." Counsel stated that someone from her office had contacted the court on February 6, 2018, in an effort to gain access to the case documents and was told that, due to the confidentiality of the case information, counsel needed to file a notice of appearance before she would be given access. Mother's counsel explained that she attempted to file a notice of appearance the following day, but that for some reason it was not filed. Thus, counsel's notice of appearance was made on the day of the consent hearing.

{¶7} After consideration, the court denied the motion for continuance. The court noted that it had already given Mother an extension of the deadline to file objections to the adoption petition, that the case had already been set for hearing for more than a month, and that the notice clearly indicated that the case had been set for a hearing— not a pretrial conference — on a "fairly simple" issue of nonsupport. Accordingly, the probate court proceeded with the consent hearing, and the following testimony was adduced.

{¶8} Father testified that he has custody of A.R.M.R. and that, prior to the filing of the adoption petition, Mother's last child support payment was made on May 4, 2016. At the time of the hearing, Mother owed approximately $1,360.91 in outstanding child support. Father stated that he did not know whether Mother had been working during the period of November 21, 2016, through November 21, 2017.

{¶9} Mother testified that she understood her support obligations under the juvenile court child-support order, but maintained that she was not always able to pay child support. Mother stated that she had been employed at Shining Star Learning Center from February 15, 2014, to November 30, 2016. However, she voluntarily left that position after she began attending school

to become a dental assistant. She explained that the hours she was required to work at the daycare center conflicted with her school schedule, which required her to attend classes from 8:00 a.m. to 2:00 p.m. Monday through Friday.

{¶10} On May 4, 2016, Mother made a $140 child support payment. Her next support payment of $41 was not made until December 29, 2017. Mother made additional child support payments of $200 on January 16, 2018, and $53.67 on February 5, 2018. Mother stated that she had been subject to a child support income holding order while she worked at Shining Star Learning Center and could not explain why none of her income was withheld to pay child support from May 2016 to November 2016.

{¶11} Mother testified that after she left Shining Star Learning Center, she attempted to find part-time employment while she attended school. Throughout the hearing, Mother admitted that she did not produce any documentary evidence to support her attempts to obtain employment during the relevant time period. Nevertheless, she testified that during her period of unemployment from 2016 to 2017, she applied for "ten to six jobs a day" online, and used a temporary service agency in Lakewood, Ohio, to apply for various factory and warehouse positions. Mother stated that she received a call-back regarding a position she applied for at FedEx, but that the position was filled before she responded. Mother also admitted that she received a job offer for a position in Columbus, Ohio, but that she did not accept the position because it was too far away. In addition, Mother testified that she applied for dental assistant positions on "professional site[s]" once she graduated from the dental assistant program in July 2017. However, Mother testified that she did not receive any legitimate job offers from November 2016 to November 14, 2017. Mother is currently working three part-time jobs — at a snack bar in a bowling alley, at a McDonald's restaurant, and as a dental assistant.

**{¶12}** With respect to Mother's finances while she attended school, Mother testified that she obtained a grant to pay for her tuition and books, relied on public assistance programs, and lived with friends who "put [her] up for periods of time" in exchange for cooking, cleaning, and child care. She stated that she had no other money coming in from November 2016 to November 2017, and that no friends or family would give her money to help her pay child support.

**{¶13}** Mother did not dispute that in April 2015, the juvenile court held her in contempt for failure to pay child support. She explained that she never filed a motion to modify her child support obligation because she "had no idea that [she] could change that." Mother testified that it was her belief that she was "obligated by law to pay that regardless of [her] position in any way, shape or form." She further stated that she has a learning disability that precluded her from fully comprehending the court proceedings.

**{¶14}** A.R.M.R.'s maternal grandmother testified that from November 2016 to November 2017, she gave Mother money for bus passes and a disposable camera to take photographs of A.R.M.R. She stated that she did not know with whom Mother was living from November 2016 to November 2017, or whether Mother was employed during that time period. The grandmother testified that Mother had never stated that she was unwilling to pay child support and that she believed Mother wanted to comply with her support obligations because "[s]he didn't get it from her father, so she knows what it's like." Grandmother testified that Mother had never asked for assistance in paying her child support obligation.

**{¶15}** At the conclusion of the hearing, counsel for Mother reiterated her continuing objection to the court's decision to go forward with the full hearing.

**{¶16}** On February 23, 2018, the probate court issued a decision, finding that Mother's

consent was not required to proceed with the petition for adoption. The court stated, in relevant part:

> The court finds that [Mother] was subject to a child support order that required her to pay $95.00 per month for support of the minor child and further finds that [Mother] was aware of and understood that she had a child support obligation. The court finds that no support was paid for the minor child for the one year proceeding the filing of the adoption petition. This court further finds that [Mother] voluntarily terminated her employment in November 2016 and did not resume working until one year later. In light of [Mother]'s ability to work, her work history and her voluntary termination of employment, she is unable to establish justifiable cause for her failure to pay support.

**{¶17}** Mother now appeals the trial court's judgment.

## II.   Law and Analysis

### A. Consent to Adoption

**{¶18}** Pursuant to R.C. 3107.06(A), a petition to adopt a minor may be granted only if written consent to the adoption has been executed by the mother of the minor unless consent is not required under R.C. 3107.07.   Under R.C. 3107.07, "[c]onsent to adoption" is not required of any of the following:

> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause * * * to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition * * *.

**{¶19}** The Supreme Court of Ohio has held, "[p]ursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause." *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919 (1987).   However,

a natural parent may not simply remain mute while the petitioner is forced to demonstrate why the parent's failure to provide support is unjustifiable. Rather, once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence is on the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner.

*Id*.

{¶20} When applying the foregoing statutes, it is essential to recognize that "the right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986), citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Adoption terminates those fundamental rights. For this reason, the Ohio Supreme Court has held that "[a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *Id*., citing *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

### B. Motion for Continuance

{¶21} For the ease of discussion, we address Mother's assignments of error out of order. In her second assignment of error, Mother argues the trial court abused its discretion by failing to grant a reasonable continuance so that the parties could conduct adequate discovery.

{¶22} The decision to grant or deny a motion for a continuance rests in the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). An abuse of discretion occurs where the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶23} In *Unger,* the Ohio Supreme Court noted that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer

must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67. The Supreme Court identified certain factors a court should consider in evaluating a motion for a continuance. These factors include:

> the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

{¶24} In this case, Mother did not file a motion for continuance in advance of the hearing date. Rather, counsel objected to the hearing going forward based on counsel's belief that the hearing was a pretrial conference and not the full evidentiary hearing on the issue of consent. As stated, counsel explained that she had been recently retained, had just filed a notice of appearance on the day of the hearing, and did not have the opportunity to review the case file or relevant documents prior to the hearing.

{¶25} On appeal, Mother argues the trial court's judgment amounted to an abuse of discretion because it denied her the opportunity to review the CSEA documents submitted by the petitioner. In addition, Mother contends that by failing to afford counsel the opportunity to prepare and conduct meaningful discovery, the trial court's judgment "placed [Mother] at a significant disadvantage" by limiting her ability to demonstrate some facially justifiable cause for the nonpayment of her child support obligation.

{¶26} Regarding counsel's inability to review the relevant evidence of Mother's child-support payment history, the petitioner correctly states that Mother has not disputed the fact

that she did not make child support payments in the year preceding the adoption petition. Moreover, the record reflects that the only document introduced by the petitioner at the hearing was a printout of Mother's child support payment history from CSEA — a certified copy that was previously submitted with the adoption petition. Under these circumstances, we are unable to conclude that counsel's inability to review the CSEA document prior to the consent hearing infringed upon Mother's constitutional due process rights.

**{¶27}** Accordingly, resolution of this assigned error relies on the circumstances encompassing Mother's representation at the consent hearing and whether the trial court's judgment prejudicially affected Mother's substantial rights. As stated, Mother does not dispute that she failed to make mandatory child support payments from November 2016 through November 2017. Thus, whether Mother's failure to provide for the maintenance and support of A.R.M.R. was justifiable was a paramount determination in this case.

**{¶28}** Ohio courts have recognized that in addition to its legal connotations, the term "justifiable" also contains a moral component. *In re Adoption of B.I.*, 1st Dist. Hamilton No. C-170064, 2017-Ohio-9116, ¶ 10, citing *Black's Law Dictionary* 882 (8th Ed.2004). To this end, the Ohio Supreme Court has held that in assessing whether the failure to support a child is justified, a distinction is made between a parent who is unwilling but financially able to support, and a parent who is willing to support but financially unable to do so. *In re: Adoption of Masa*, 23 Ohio St.3d 163, 166, 492 N.E.2d 140 (1986). "The latter could constitute justification." *Id.* Thus, it reasonably follows that evidence demonstrating a parent's inability to obtain gainful employment during the relevant one-year time period, despite his or her best efforts, would be a significant factor in assessing whether the parent was willing, but financially unable to comply with a child support obligation.

{¶29} After careful review, we find the trial court's denial of the motion for continuance effectively prevented Mother from having a reasonable opportunity to satisfy her burden of proof on this highly relevant and contested issue. Here, the record reflects that counsel for Mother received access to her client's case file on the day of the consent hearing, and was required to actively access evidence and relevant testimony for the first time as it was being introduced. In essence, Mother was placed in a position where she had to defend her right to have a continued relationship with her minor child without counsel's full grasp of the circumstances alleged in the petition and without the opportunity to present evidence to corroborate her testimony. Without evidentiary quality documents to support her attempts to gain employment while attending school, Mother's sole evidence supporting her justifiable cause was her own testimony — the credibility of which was impeached by the absence of corroborating evidence. Given the magnitude of the rights involved and the potential to forever terminate Mother's parental rights, we believe due process required a continuance.

{¶30} The significance of Mother's limited access to discovery and her failure to introduce evidence at the consent hearing has not been lost on the petitioner. On appeal, the petitioner asserts that Mother's failure to produce evidence to corroborate her efforts to obtain employment during the relevant time period suggests that her credibility "was shaky at best." Similarly, counsel for petitioner continuously raised Mother's failure to produce documentary evidence during the consent hearing. For instance, counsel for the petitioner noted that Mother did not produce paychecks evidencing her wage withholdings while employed by the daycare center. Counsel also disputed the alleged justifiable cause supporting Mother's nonpayment and had Mother admit during her cross-examination that she did not produce any evidence to support her testimony that she actively pursued employment while attending school, "like

applications, or copies of an e-mail."

{¶31} In addition, it's necessary to note that issues relating to Mother's visitation rights and her unfavorable history in the juvenile court case were extensively raised in appellee's merit brief, seemingly in an effort to disparage Mother's credibility. While such factors may be relevant during a best-interests stage of an adoption petition, the adequacy of a natural parents past behavior and relationship with his or her child are not issues for the probate court to consider when assessing the financial requirements of R.C. 3107.07(A).

{¶32} Under these unique circumstances, we find the trial court abused its discretion by denying counsel's request for a continuance. Based upon the substantial barriers placed before Mother in her effort to demonstrate a facially justifiable cause, we find the potential prejudice suffered by Mother far outweighed any inconvenience that may have resulted from a brief continuance. Contrary to petitioner's petition on appeal, the reasons supporting the request for a continuance were not merely dilatory, contrived, or a frivolous attempt to delay. Rather, the request for continuance was made following counsel's good faith misunderstanding of the proceedings and the realization that Mother's fundamental rights could not be effectively defended without meaningful discovery or prepared counsel. Moreover, we are unable to conclude that counsel's unpreparedness was avoidable where Mother's case file was not released to counsel until the day of the consent hearing due to issues of confidentiality. While counsel may have had a miscommunication with the court concerning her notice of appearance, we are unwilling to hold counsel's misunderstandings against Mother where the termination of her parental rights was on the line.

{¶33} In finding an abuse of discretion, we recognize the trial court previously went to great lengths to provide Mother with additional time to file written objections to the petition for

adoption. We further recognize that counsel for Mother did not expressly raise the inadequacy of discovery at the time she requested the continuance. However, viewing the record in its entirety, it is evident that counsel's failure to directly reference discovery or potential evidence supporting Mother's justifiable cause merely highlights the unfavorable position Mother was placed in by having to go forward in a proceeding with counsel who only obtained access to the case file moments before the hearing was scheduled to begin. Without a comprehensive understanding of the case, counsel had no opportunity to formulate a detailed basis for the continuance and reasonably asserted that a continuance was necessary under such circumstances.

{¶34} While the trial court characterized the hearing as a fairly simple issue, its implications were far reaching and significant to all parties involved. Thus, resolution of the contested issues should be predicated on the review of all relevant and available evidence following adequate discovery and the opportunity to prepare.

{¶35} Mother's second assignment of error is sustained.

{¶36} Mother's first assignment of error is rendered moot. Judgment reversed and remanded for a new hearing in order to provide Mother with the opportunity to present evidence documenting her pursuit of employment during the relevant time period.

It is ordered that appellant recover from appellee costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.


A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
EILEEN A. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION

EILEEN A. GALLAGHER, P.J., DISSENTING

{¶37} I respectfully dissent. Based on the record before us, I would affirm the trial court's decision that Mother's consent to the adoption of A.R.M.R. was not required under R.C. 3107.07(A).

{¶38} First, although the majority raises a number of important, legitimate concerns related to the protection of Mother's fundamental rights, I do not agree, under the particular facts and circumstances here, that the trial court abused its discretion in denying Mother's request for a continuance. Abuse of discretion is a very high standard. Reversal of a trial court's decision for abuse of discretion requires a showing that the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When reviewing a matter for abuse of discretion, we may not substitute our judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995). On the record before us, I do not believe the requisite showing has been made.

{¶39} The majority concludes that "due process required a continuance" and that the trial court, therefore, abused its discretion in denying Mother's request for a continuance because Mother "was placed in a position where she had to defend her right to have a continued relationship with her minor child without counsel's full grasp of the circumstances alleged in the petition and without the opportunity to present evidence to corroborate her testimony."

However, on appeal, Mother asserts only that the trial court abused its discretion in denying her motion for continuance because she was denied an opportunity to conduct discovery. Her second assignment of error — the assignment of error addressing the trial court's denial of her motion for continuance — states: "The trial court abused its discretion by failing to grant a reasonable continuance so that the parties could conduct adequate discovery prior to a full hearing." In support of this assignment of error, Mother argues that the trial court's refusal "to allow for the exchanging of discovery" with petitioner violated her right to due process and that "[w]ithout having the ability to conduct discovery, Mother was placed at a significant disadvantage, and was unable to adequately prepare for trial in this matter."

{¶40} However, Mother's counsel did not mention a need for discovery when she requested a continuance at the hearing.[1] As a general matter, a party cannot raise new arguments on appeal that were not presented below, and a trial court cannot be said to have abused its discretion by failing to consider arguments that were never presented to it. *See, e.g., State v. D.K.*, 8th Dist. 106539, 2018-Ohio-2522, ¶ 17; *Glendell-Grant v. Grant*, 8th Dist. Cuyahoga No. 105895, 2018-Ohio-1094, ¶ 11.

{¶41} Further, Mother has not identified any discovery she contends she needed in order to properly prepare for the hearing. Although Mother argues that she was disadvantaged by the parties' inability to exchange discovery "because every single document presented by Petitioner during the trial on the matter was unseen by counsel for Respondent before the trial," the only document petitioner introduced at the hearing was a printout of Mother's child support payment history from CSEA — a certified copy of which had been previously submitted with the petition

---

[1]Although Mother asserts in her brief that her counsel asked the trial court, when arguing for a continuance, that "she please be provided with an opportunity to conduct discovery on the matter," the transcript of the hearing and the prehearing discussions relating to counsel's request for a continuance do not reflect this.

for adoption.

{¶42} Mother did not dispute that she did not make any child support payments during the year preceding the filing of the adoption petition. Thus, the only issue to be decided at the hearing was whether justifiable cause existed for Mother's failure to support A.R.M.R. during this time period — a determination that turned on Mother's efforts to obtain employment. Any evidence related to that issue would have been within Mother's custody and control and not dependent on any discovery to be obtained from petitioner (or anyone else). Accordingly, I would overrule Mother's second assignment of error.

{¶43} I would also overrule Mother's first assignment of error. In her first assignment of error, Mother challenges the probate court's finding that her consent to the adoption of A.R.M.R. was not required under R.C. 3107.07(A) because she failed, without justifiable cause, to support A.R.M.R. for the year prior to the filing of the petition for adoption.

{¶44} "'The question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence.'" *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 24, quoting *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph four of the syllabus; *see also In re Adoption of L.C.F.,* 8th Dist. Cuyahoga Nos. 101798 and 101799, 2015-Ohio-1545, ¶ 10. On a manifest weight of the evidence challenge, an appellate court weighs the evidence, including all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice'" that reversal of the trial court's judgment is required. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997),

quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20; *see also In re Adoption of K.N.W.*, 4th Dist. Athens Nos. 15CA36, 15CA37, ¶ 27.

{¶45} As the majority observes, in determining whether a failure to support a child is justifiable, there is a distinction between a parent who is unwilling but able to financially support a child, and a parent who is willing to provide financial support but unable to do so. *In re Adoption of Masa*, 23 Ohio St.3d 163, 166-167, 492 N.E.2d 140 (1986). When determining whether justifiable cause exists for a parent's failure to support, the trial court "weigh[s] the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support." *Bovett* at paragraph three of the syllabus. To preserve the right to consent to adoption, a biological parent "must justify his or her failure to support for substantially the entire one-year period." *In re Adoption of Tyler K. Kilbane & Ashley Kilbane*, 130 Ohio App.3d 203, 207, 719 N.E.2d 1012 (8th Dist.1998), quoting *In re Adoption of Kessler*, 87 Ohio App.3d 317, 321-322, 622 N.E.2d 354 (6th Dist.1993). "'It is not enough to show that a failure to support was justified for some time during the year; rather, it must be demonstrated that no modicum of support reasonably could have been provided at any time during the year.'" *Kilbane* at 207, quoting *Kessler* at 321-322; *see also Bovett* at paragraph three of the syllabus ("Under R.C. 3107.07(A), the probate court shall determine * * * whether the parent's failure to support the child for that period as a whole (and not just a portion thereof) was without justifiable cause.") (Emphasis deleted.)

{¶46} Mother argues that justifiable cause existed for her failure to support A.R.M.R. during the relevant time period because she was attending a dental assistant program and could not find a job that would accommodate her school schedule.

**{¶47}** Although unemployment and a lack of income may constitute justification for a failure to support — *see, e.g., In re Adoption of S.A.H.*, 4th Dist. Ross No. 07CA2947, 2007-Ohio-3710, ¶ 20 ("It is axiomatic that a natural parent's failure to support her child is justified when that parent's financial condition is such that she is unable to do so.") — a parent's "voluntary unemployment" does not excuse a failure to support a child. *See, e.g., In re Adoption of J.A.C.*, 4th Dist. Scioto No. 14CA3654, 2015-Ohio-1662, ¶ 2, 17-22; *see also In Re Adoption of Deems*, 91 Ohio App.3d 552, 556-557, 632 N.E.2d 1347 (3d Dist.1993) ("[T]he law does not sanction [a parent's] voluntary termination of gainful employment as a justification or excuse for not contributing to the support of his children."); *In re LaFave*, 2d Dist. Montgomery No. 17697, 1999 Ohio App. LEXIS 3714, 11-12 (Aug. 13, 1999) (A parent's "[v]oluntary unemployment, for whatever good and worthy reasons (such as being a role model for her children [by seeking higher education]) is not by itself sufficient justifiable cause for failure to meet even any small part of court-required child support payments."); *In re Adoption of Christopher James Dutton*, 7th Dist. Mahoning No. 83 C.A. 141, 1984 Ohio App. LEXIS 10905, 6-8 (Sept. 25, 1984) (where father "opted to give up a good job and attend school while living on his mother's financial assistance and ultimately welfare," his failure to support his child was "self-imposed and not justifiable").

**{¶48}** In this case, Mother's testimony regarding her efforts to seek employment and her willingness to support her son was not credible. Mother testified that after she left her employment at Shining Star on November 30, 2016, she applied for "ten to six jobs a day" online and through a temporary service in Lakewood, but was not called back regarding any jobs — except one in Columbus and one at FedEx that was filled before she called back. Mother stated that she had no documentation of her efforts to find employment during this time period.

**{¶49}** Although Mother claimed that she was willing to pay child support when she was able to do so, she had been previously held in contempt for failing to pay child support. She also did not make any child support payments during the last six months she worked at Shining Star. Although Mother testified that she had been subject to a child support income holding order when she worked at Shining Star and could not explain why none of her income at Shining Star had been withheld to pay child support from May 2016 to November 2016, she also indicated that she knew child support was not being withheld from her paychecks during that time period and talked to her employer "several times about it." Although Mother graduated from the dental assistant program on July 6, 2017, she was not employed again until November 14, 2017 — more than four months later. Mother offered no explanation as to why she did not return to work immediately after she completed the dental assistant program.

**{¶50}** Following a thorough review of the record, I believe that the trial court's determination that Mother failed, without justifiable cause, to support A.R.M.R. for the year preceding the filing of the adoption petition, is supported by clear and convincing evidence and is not against the manifest weight of the evidence. Accordingly, I would overrule Mother's first assignment of error and affirm the trial court's decision that Mother's consent to the adoption was not required under R.C. 3107.07(A).[2]

---

[2]Although I believe the facts and law require affirmance of the trial court's decision, I believe it is also important to note that adoption is a two-step process. Even where a probate court makes a determination that a biological parent's consent to adoption is not required, the court must still determine that adoption is in the best interest of the child before an adoption can proceed. *See, e.g., L.C.F.,* 2015-Ohio-1545, at ¶ 7. If, as Mother contends, she has a close, meaningful relationship with her son, it may be that adoption by petitioner would not be in A.R.M.R.'s best interest.